UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUAN H. MERCADO,                    )
            Petitioner             )        CIVIL NO. 04-10043-RWZ
                                    )
       v.                           )
                                    )
UNITED STATES OF AMERICA,           )
            Respondent              )
                                    )

**Government's Memorandum In Opposition To**
**Petitioner's Motion Under 28 U.S.C. § 2255**
**To Vacate His Conviction And/Or Sentence**

**Introduction**

The United States of America, by Michael J. Sullivan, United

States Attorney, and Michael J. Pelgro, Assistant U.S. Attorney,

hereby files this memorandum in opposition to the petitioner's

motion under 28 U.S.C. § 2255 to vacate his conviction and/or

sentence. As set forth more fully below, the Court should

dismiss this petition without an evidentiary hearing because:

(1) the petitioner has failed to present any facts in support of

his conclusory statements that he was "coerced" into pleading

guilty or into not filing a direct appeal of his sentence;

(2) his current statements about his attorney's performance are

contradicted by the representations that he made when he pleaded

guilty; and (3) the record in the criminal case conclusively

refutes his unsupported claims of ineffective assistance before,

during, and after the sentencing hearing.

## Relevant Background

The Criminal Offenses

Petitioner Juan H. Mercado ("Mercado") was the subject of a relatively short narcotics investigation conducted by the Drug Enforcement Administration ("DEA") and the Beverly Police Department ("BPD") in early 2002. Presentence Report ("PSR") at ¶¶ 13-16. During the investigation, a BPD undercover officer ("UCO") made seven controlled purchases of heroin directly from Mercado in downtown Beverly. PSR at ¶¶ 18-37. All of the transactions were surveilled by the BPD and/or the DEA. Id. Four of the transactions were recorded by DEA and two of the transactions were captured on videotape. PSR at ¶¶ 23-37. The UCO had multiple, consensually-recorded, telephone conversations with Mercado arranging certain of the transactions and negotiating the terms of those sales. PSR at ¶¶ 23, 30, 33, 38. On April 11, 2002, Mercado was arrested in Beverly as he was about to engage in his eighth hand-to-hand sale of heroin to the UCO. PSR at ¶¶ 38-40. Mercado made post-arrest statements admitting his heroin sales and describing his multiple sources of supply. PSR at ¶¶ 41-43.

Pretrial Proceedings and Presentence Report

Mercado was charged initially in a criminal complaint.

2

Docket Entry ("DE") 2-3.[1]  Attorney Melvin Norris was appointed
on April 12, 2002 to represent Mercado.  DE 8.  A nine-count
indictment was returned by a federal grand jury on May 2, 2002.
PSR at ¶¶ 4-7; DE 12.  On January 3, 2003, the Court granted
Attorney Norris's motion for the preparation of a pre-plea PSR.
DE 35.

The Probation Department determined that Mercado was
responsible for 100-400 grams of heroin, that his Base Offense
Level ("BOL") was 26, that he should get a two-level enhancement
for his possession of two knives when he was arrested (resulting
in an Adjusted Offense Level of 28), and that his Total Offense
Level ("TOL") would be 25 if the Court granted him a three-level
reduction for timely acceptance of responsibility.  PSR at ¶¶ 48-
60.  The Probation Department determined that Mercado had eight
criminal history points, that he had three sets of drug
distribution convictions and one set of firearms convictions in
various Massachusetts state courts during the 1990's, and that he
fell within Criminal History Category ("CHC") IV.  PSR at ¶¶ 65-
74.

The Probation Department determined, however, that the above
four sets of convictions also qualified Mercado as a career
offender, which trumped the above Guidelines' calculations.

---

[1]The docket entries cited in this memorandum are for the
underlying criminal case, United States v. Juan H. Mercado,
Criminal No. 02-10146-RWZ.

3

Mercado's designation as a career offender resulted in a BOL of 34, a TOL of 31, a CHC of VI, and a Guideline Sentencing Range ("GSR") of 188-235 months' imprisonment.  PSR at ¶¶ 61-63, 75, 85.

### Mercado's Guilty Plea

On March 19, 2003, after the preparation of the pre-plea PSR, Mercado pleaded guilty to all counts of the indictment pursuant to a written plea agreement with the government.  PSR at ¶ 9; DE 39-40.  A copy of the plea agreement is attached to this memorandum as Exhibit A.[2]  At the end of the agreement, Mercado acknowledged that he understood the maximum penalties and the "Sentencing Guideline penalties potentially applicable" to the offenses, that he was "satisfied with the legal representation provided to [him] by [his] attorney, that he had had sufficient time to meet with his attorney and discuss his case, that he had discussed "possible defenses" and whether he should go to trial, that he was entering into the plea agreement "freely, voluntarily, and knowingly," and that he believed that the agreenent was in his best interest.  *See* Ex. A (p.10).[3]  Attorney

---

[2]Exhibit A is a copy of the unsigned plea agreement that was attached to the PSR.  The original, signed, plea agreement was filed with the Court on March 19, 2003.  DE 40.

[3]In the plea agreement, the government agreed to take the position that Mercado qualified as a career offender, that the applicable GSR was 188-235 months' imprisonment, and that it would recommend a sentence of 188 months' imprisonment.  Ex. A at 2-4.  Mercado reserved the right to argue that he did not qualify

4

Norris certified that Mercado had read the agreement, that they
had discussed its meaning, and that Attorney Norris believed
Mercado understood the agreement and was entering into it
"freely, voluntarily, and knowingly." Id.

At the Rule 11 hearing on March 19, Mercado repeated these
assertions directly to the Court after being sworn to tell the
truth. A copy of the transcript of the Rule 11 hearing is
attached hereto as Exhibit B. Mercado stated that he had read
the indictment, that he had discussed it with Attorney Norris,
and that he understood the crimes charged in it. Ex. B at 4-7.[4]
Mercado stated that he understood the statutory maximum penalties
as well as the penalties required by the Sentencing Guidelines.
Ex. B at 7-11. Mercado acknowledged the Court's warning that
"once this is finished, you are stuck, and you will not be
allowed to withdraw your plea because you do not like the
sentence." Ex. B at 11-12. After Mercado affirmed that he
understood the constitutional rights he was waiving, Ex. B at 12-
14, the Court had the following exchange with Mercado:

> THE COURT:        Has anybody brought any
>                   pressure on you whatsover

---

as a career offender, left open the possibility of filing motions
for a downward departure, and made no promises concerning his
sentence recommendation. Id.

[4]Mercado stated that he had a 10th-grade education, that he
could read English "quite a bit," that he was not under the
influence of alcohol or drugs, and that he fully understood what
was going on in court. Ex. B at 4-5.

|  | to offer this plea? |
|---|---|
| THE DEFENDANT: | No. |
| THE COURT: | Has anybody made any promises to you to get to you offer [sic] this plea? |
| THE DEFENDANT: | No. |
| THE COURT: | Are you doing this entirely of your own volition? |
| THE DEFENDANT: | Yes. |

Ex. B at 14. Mercado then agreed with the government's statement of facts and told the Court in his own words that he sold heroin to the UCO on multiple occasions. Ex. B at 14-18. After this colloquy, the Court accepted the plea, finding that Mercado "understands the nature of the charges and the maximum penalty." Ex. B at 18.

### Mercado's Objections To The PSR

Attorney Norris filed 19 objections to the PSR on behalf of Mercado. See Addendum to PSR. Attorney Norris objected in detail to: (1) the amount of drugs attributed to Mercado (stating that Mercado should be held accountable only for 5-10 grams rather than 100-400 grams); (2) the enhancement based on Mercado's possession of knives (stating that the knives did not qualify as dangerous weapons); (3) the TOL calculated by the Probation Department; and (4) the Probation Department's determination that Mercado qualified as a career offender (stating that the applicable GSR should be 18-24 months'

6

imprisonment).  Addendum to PSR, Def. Obj. Nos. 3-10, 13.[5]
Attorney Norris also asserted by way of objection that Mercado
was entitled to a downward departure based on: (1) his
substantial assistance to the government; (2) "the totality of
the circumstances" surrounding the crimes, Mercado's
disadvantaged upbringing, and his extraordinary acceptance of
responsibility; and (3) the overstatement of his criminal history
by the career offender provisions.  Addebdum to PSR, Def. Obj.
Nos. 14, 16-19.[6]  The Probation Department declined to change its
calculations under the Sentencing Guidelines and noted Mercado's
several requests for a downward departure.

    The Sentencing Hearing

    The Court conducted a sentencing hearing on April 29, 2003.
A copy of the transcript of the sentencing hearing is attached
hereto as Exhibit C.  Prior to the hearing, Attorney Norris filed
a sentencing memorandum, reiterating his requests for a downward
departure.  DE 42.  At the sentencing hearing, the Court agreed,
in part, with Attorney Norris's quantity-based objections,

---

[5]Attorney Norris also convinced the Probation Department to
delete from the PSR information from a cooperating individual
that Mercado had sold heroin to a user who had died as a result
of an overdose, arguing that inclusion of such information in the
PSR was too prejudicial.  Addendum to PSR, Def. Obj. No. 1.

[6]The government disagreed with the nature and value of
Mercado's attempt to cooperate and did not file a motion for a
downward departure pursuant to U.S.S.G. § 5K1.1 or 18 U.S.C.
§ 3553(e).

finding that Mercado was responsible for less than 100 grams, but more than 5-10 grams, of heroin. Ex. C at 3-4. The Court also agreed with Attorney Norris's objections to the enhancement based on Mercado's possession of knives and struck the two-level enhancement. Ex. C at 4-7.[7] The Court, however, overruled Attorney Norris's objections to Mercado's designation as a career offender, agreeing with the Probation Department's calculation of a TOL of 31 and a GSR of 188-235 months' imprisonment. Ex. C at 7-8, 15.

Attorney Norris then argued for a downward departure and the Court questioned the government about its reasons for declining to file a § 5K1.1 motion. Ex. C at 8-13. The Court ultimately declined to depart downward, stating that it had no "principle[d] basis on which to do it" and that, though it was inclined to depart, it could not discern a "possible basis for a departure." Ex. C at 13-14. The Court further stated: "I regret this, but I don't see how I can do it [i.e., depart downward]. Ex. C at 15. After being offered the opportunity to address the Court, Mercado asked for forgiveness but said nothing about any dissatisfaction with Attorney Norris. Ex. C at 16-17. The Court imposed a low-end sentence of 188 months' imprisonment. Ex. C at 16.

At the conclusion of the sentencing hearing, the Court

---

[7]As the Court observed at the hearing, this decision had beneficial consequences for Mercado's designation within the federal prison system. Ex. C at 6.

8

informed Mercado that he had the right to appeal his sentence.
Ex. C at 17.  The Court stated that it would ask Attorney Norris
"to discuss this with you and [you should] file a notice of
appeal within ten days if you decide to exercise your right to
appeal."  Ex. C at 17.  Mercado did not file a direct appeal in
the criminal case.

### Argument

In his § 2255 motion, Mercado has strung together a
potpourri of conclusions about Attorney Norris's performance
without any elaboration whatsoever.  Mercado states that Attorney
Norris "coerced" him into not seeking a direct appeal of his
sentence and that Attorney Norris "showed little or no interest"
in his case and "did not want to be bothered ... with further
court proceedings" (Ground One).  Mercado further states that
Attorney Norris "did not attempt to challenge" his status as a
career offender (Ground Two) and that Attorney Norris made only a
"feeble attempt" at reducing the "points" in the PSR (Ground
Three).  Mercado finally states that transportation delays caused
him to be late for his sentencing hearing, which in turn caused
the Court to view him unfavorably, and that Attorney Norris did
nothing to correct this negative perception (Ground Four).  In
his subsequently-filed affidavit, Mercado essentially repeats
these conclusions but adds that Attorney Norris "coerced" him

into making decisions,[8] that Attorney Norris was paid by the
government, that Mercado was denied his right to a trial by
reason of Attorney Norris's "misconduct" and/or incompetence, and
that Attorney Norris was preoccupied with "other thoughts" while
representing Mercado.

As set forth more fully below, Mercado has failed to meet
his burden of presenting specific facts demonstrating that
Attorney Norris was constitutionally ineffective in his
representation of Mercado or in his post-sentencing advice to
Mercado concerning whether to file a direct appeal. Moreover,
Mercado should not be heard now to contradict his representations
in his plea agreement and directly to the Court at the Rule 11
hearing that he was satisfied with Attorney Norris. Finally, the
record conclusively demonstrates that Attorney Norris was not
ineffective in his representation of Mercado and that Mercado had
no meritorious basis to appeal the Court's calculation of the
career-offender GSR or its discretionary decision not to depart
downward.

A.    There Is No Need For An Evidentiary Hearing.

Mercado bears the burden of demonstrating, by a
preponderance of evidence, not only that he is entitled to relief

---

[8]While Mercado does not indicate what decisions were
"coerced" by Attorney Norris, the government assumes that Mercado
means his decision to plead guilty in addition to the decision
not to file a direct appeal.

under §2255 but also that he is entitled to an evidentiary hearing. Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993); Cody v. United States, 2001 WL 487947 at *5 (1st Cir. 2001). An evidentiary hearing is unnecessary when a §2255 petition "is inadequate on its face" or, "although facially adequate[,] is conclusively refuted as to the alleged facts by the files and records of the case." McGill, 11 F.3d at 226. See also Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993)(accord); Barrett, 965 F.2d at 1186 (accord). A petitioner is not entitled to an evidentiary hearing where his allegations "cannot be accepted as true because 'they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact,'" Murchu v. United States, 926 F.2d 50, 57 (1st Cir. 1991)(citation omitted); McGill, 11 F.3d at 226 (accord), or where they "amount to mere 'bald' assertions without sufficiently particular and supportive allegations of fact," Barrett, 965 F.2d at 1186.

> A district court may dismiss a section 2255 petition without holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations, although adequate on their face, consist of no more than conclusory prognostications and perfervid rhetoric, or if the key factual averments on which the petition depends are either inherently improbable or contradicted by established facts of record.

United States v. LaBonte, 70 F.3d 1396, 1412-13 (1st Cir. 1995).

11

The trial judge, moreover, "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." <u>McGill</u>, 11 F.3d at 225.  <i>See also</i> <u>Cohen v. United States</u>, 996 F. Supp. 110, 112 (D. Mass. 1998)(Young, CJ)(a court "may rely on its own recollections of previous events when deciding a motion brought under section 2255"); <u>Norton v. United States</u>, 1997 WL 305222 at *2 (D. Mass. 1997)(Young, CJ) (accord); <u>Indelicato v. United States</u>, 106 F. Supp. 2d 151, 154 (D. Mass. 2000)(Saris, J)(accord).

Here, Mercado has made absolutely no effort to support his accusations with any facts, let alone specific or particular facts.  He has not explained how he was "coerced" into not filing a direct appeal or into making the decision to plead guilty.  He has not pointed to any facts demonstrating that Attorney Norris engaged in misconduct, acted incompetently or inappropriately, or failed to do something that a competent lawyer would have done. Moreover, as set forth below, the record and Mercado's own representations to the Court contradict Mercado's unsupported claims that Attorney Norris was constitutionally ineffective. Accordingly, Mercado has failed to sustain his burden of establishing the need for an evidentiary hearing.

12

B.    Mercado's Current Claims Are Not Credible Since He
      Represented To The Court That He Was Satisfied With His
      Attorney.

As noted above, Mercado pleaded guilty pursuant to a written

plea agreement in which he acknowledged that he was satisfied

with his attorney and that he was entering into his guilty plea

freely, voluntarily, and knowingly.  He cannot now be allowed to

contradict those assertions by making baseless accusations

motivated by a desire to undo his sentence.  Since a plea

agreement is interpreted under contract-law principles, the law

will not allow a party to the contract to make an end-run around

it by explicitly or implicitly repudiating the assurances made in

the agreement.  *See* United States v. Gonczy, 357 F.3d 50, 53-54

(1st Cir. 2004); United States v. Atwood, 963 F.2d 476, 478-79

(1st Cir. 1992)(observing that the government must be held to

"the most meticulous standards of both promise and performance");

United States v. Canada, 960 F.2d 263, 269-71 (1st Cir.

1992)(same).  Moreover, "[a]bsent special circumstances, a

defendant – quite as much as the government – is bound by a plea

agreement that recites that it is a complete statement of the

parties' commitments."  United States v. Connolly, 51 F.3d 1, 3

(1st Cir. 1995)(rejecting defendant's sentencing claim based on

alleged oral assurance made by prosecutor where written agreement

recited that there were no other promises or agreements).  There

are no special circumstances here that would allow Mercado to

13

repudiate his assurances in the plea agreement that he was satisfied with his attorney and that he was not being coerced or pressured into pleading guilty.

Apart from the plea agreement, Mercado made sworn, face-to-face statements to the Court that he was not being coerced into pleading guilty.  It is "the policy of the law to hold litigants to their assurances" during change-of-plea hearings, United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994), and statements at such hearings by defendants "carry a strong presumption of verity." United States v. Martinez-Molina, 64 F.3d 719, 733 (1st Cir. 1995)(quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  A defendant "is ordinarily bound by his or her representations in court disclaiming the existence of additional promises," Bemis v. United States, 30 F.3d 220, 222 (1st Cir. 1994), and may not "turn his back on his own representations to the court merely because it would suit his convenience to do so." United States v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989).  Cf. United States v. Marrero-Rivera, 124 F.3d 342, 348-49 (1st Cir. 1997)(rejecting defendant's claim that he should be allowed to withdraw his "pressured" guilty plea because his Rule 11 statements indicated no coercion and contradicted his later claim); United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984)("even if the appellant had asserted that he made false statements at the change-of-plea proceedings, the

14

presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations on the §2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified").

Based on Mercado's earlier written and verbal representations, therefore, this Court should reject as not credible his current claims that he was "coerced" into pleading guilty and/or that he was dissatified with Attorney Norris's performance through the Rule 11 hearing.  The record, moreover, refutes Mercado's claims since the evidence against Mercado was overwhelming and his counseled decision to plead guilty certainly was in his best interest as it lowered his sentencing exposure.[9]

C.    Attorney Norris Was Not Constitutionally Ineffective At Or After The Sentencing Hearing.

Under the well-known test enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in order to prevail, Mercado must establish (1) that "counsel's performance was deficient ... that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "that the deficient

---

[9]The fact that Attorney Norris was appointed by the Court, and thus paid by the government, is of no legal consequence and does not aid Mercado.  Accordingly, the Court should reject outright this assertion as well as its implication that Attorney Norris was somehow beholden to the government.

performance prejudiced the defense ... that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. *See also* Bucuvalas v. United States, 98 F.3d 652, 658 (1st. Cir. 1996)(observing that a defendant's burden of proving both prongs of the Strickland test is "heavy"). Under the first prong, Mercado must demonstrate that Attorney Norris's representation "fell below an objective standard of reasonableness." Id. at 687-88. *See also* Murchu, 926 F.2d at 58 (accord). Since there is a wide range of professionally competent representation, since there are an infinite number of situations in which counsel must make strategy decisions, and since defendants are often tempted to second-guess counsel's assistance after an adverse result, judicial scrutiny of trial counsel's performance "must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. *See also* Matthews v. Rakiev, 54 F.3d 908, 916 (1st Cir. 1995)(accord); Ouber v. Guarino, 158 F. Supp. 2d 135, 148 (D. Mass. 2001) (observing that habeas court "owes a high degree of deference to the judgment exercised and decisions made by counsel" and that habeas review "is not an occasion for judicial second-guessing of informed

16

judgments"), *aff'd,* 293 F.3d 19 (2002).

Applying the <u>Strickland</u> standard, the First Circuit has emphasized that "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." <u>United States v. Natanel</u>, 938 F.2d 302, 309-10 (1st Cir. 1991); <u>Lema</u>, 987 F.2d at 51 (accord); <u>Arizaga v. United States</u>, 130 F. Supp. 2d 335, 338 (D. P.R. 2001)(accord).

> Under *Strickland v. Washington,* ... counsel is not incompetent merely because he may not be perfect. In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent.

<u>Arroyo v. United States</u>, 195 F.3d 54, 55 (1st Cir. 1999). *See also* <u>McGill</u>, 11 F.3d at 227 ("To avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable."); <u>Tavares v. United States</u>, 2001 WL 1681861 at *4 (D. Mass. 2001) (Bowler, MJ)(observing that the Sixth Amendment "guarantees proficient as opposed to perfect representation")(*citing* <u>Prou</u>, 199 F.3d at 48).

Like the Supreme Court, the First Circuit has emphasized that the performance standard "is to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." <u>Natanel</u>,

17

938 F.2d at 309.  *See also* <u>Lema</u>, 987 F.2d at 51 (observing that

habeas court must evaluate the challenged conduct "from counsel's

perspective at the time" and must make every effort "to eliminate

the distorting effects of hindsight"); <u>Matthews</u>, 54 F.3d at 917

(that counsel's trial strategy "was not ultimately a winning

strategy is of no moment in assessing its reasonableness at the

time"); <u>Ouber</u>, 158 F. Supp. 2d at 148 (observing the relevant

inquiry "is whether under all the circumstances of [the] case,

viewed as of the time of counsel's conduct, counsel's performance

was reasonable").

> [T]actical decisions, whether wise or unwise,
> successful or unsuccessful, cannot ordinarily
> form the basis of a claim of ineffective
> assistance....  Only where a defense decision
> is completely unreasonable, not merely wrong,
> so that it bears no relationship to a
> possible defense strategy, is further review
> into counsel's competence required.

<u>United States v. Ortiz Oliveras</u>, 717 F.2d 1, 3-4 (1st Cir. 1983).

*See also* <u>Barrett</u>, 965 F.2d at 1193 (habeas petitioner must

demonstrate that counsel's error "clearly resulted from neglect

or ignorance rather than from informed, professional judgment"

and "strategic choices made after thorough investigation of law

and facts relevant to plausible options are virtually

unchallengeable").

Under the second prong of the <u>Strickland</u> test, Mercado must

affirmatively prove prejudice, i.e., that his attorney's errors

"actually had an adverse effect on the defense" and not merely

that they "had some conceivable effect on the outcome of the

proceeding." 466 U.S. at 693.

> The defendant must show that there is a
> reasonable probability that, but for
> counsel's unprofessional errors, the result
> of the proceeding would have been different.
> A resonable probability is a probability
> sufficient to undermine confidence in the
> outcome.

466 U.S. at 694. *See also* <u>Matthews</u>, 54 F.3d at 916 (accord).

Focusing on this prong, the First Circuit has stated:

> On one end, it is not enough to show that the
> errors had "some conceivable effect on the
> outcome." Nor is it required, however, that
> the defendant prove that the errors were more
> likely than not to have affected the verdict.
> It is important to maintain the focus of an
> ineffectiveness inquiry on the "fundamental
> fairness of the proceeding."

<u>Gonzalez-Soberal v. United States</u>, 244 F.3d 273, 278 (1st Cir.

2001).

Viewed against these standards, it is clear that Attorney

Norris performed competently and professionally appropriately in

connection with the sentencing hearing. He made many detailed

objections to the PSR that resulted in the deletion of

prejudicial material from the PSR and that caused the Court to

lower the drug quantity and rescind the weapons enhancement.

Contrary to Mercado's current statements, Attorney Norris did

challenge the career-offender designation and he made more than a

"feeble attempt" to lower the applicable GSR. The bottom line,

however, was that Mercado was a career offender based on his four

sets of relatively-recent, counseled, predicate convictions.[10] Mercado's criminal history thus sealed his fate under the Sentencing Guidelines and the fact that Attorney Norris could not change that result does not mean that he was constitutionally ineffective.[11]

Attorney Norris also made departure motions in a further effort to lower Mercado's GSR. Yet even the Court, which candidly acknowledged that it was inclined to depart downward, could find no principled basis on which to grant such a departure. There was simply nothing highly atypical or unusual about Mercado, his background, or his criminal history that warranted a downward departure.[12] Thus, the Court's sentence at

---

[10]Mercado was represented by counsel in all four of his predicate convictions, the last of which occurred in the Essex Superior Court in 1997, PSR at ¶¶ 66-67, 69, 71, and he makes no claim that they suffered from any constitutional defect.

[11]The Court should reject outright the notion that Attorney Norris was ineffective for failing to correct the transportation problems that caused Mercado to be late for his sentencing hearing. Mercado was in custody and obviously was not in control of his transportation to and from court. It is equally obvious from the transcript that the Court never held the delay against Mercado in determining his sentence since the Court ruled in his favor on Guidelines' issues, searched unsuccessfully for a reason to depart downward, and expressed regret at having to impose the sentence required by the career offender provisions.

[12]The Court stated that it initially thought that a departure could be based on when Mercado committed the prior offenses but then realized that this was unwarranted because the gap between Mercado's prior offense conduct and his federal offense conduct was caused, in part, by the fact that he was incarcerated. Ex. C at 11-15.

the low end of the career-offender GSR cannot somehow be
attributed to shoddy performance by Attorney Norris since any
other result was not warranted under the Sentencing Guidelines.
Indeed, Congress has explicitly provided that recidivist drug
traffickers such as Mercado be sentenced "at or near" the
statutory maximum for such crimes and the career offender
provisions are the Sentencing Commission's implementation of that
directive.   28 U.S.C. § 994(h); U.S.S.G. § 4B1.1, comment.
(backg'd); United States v. Ventura, 353 F.3d 84, 93 (1st Cir.
2003).   The mere fact that the Court applied the Sentencing
Guidelines the way that Congress intended they be applied does
not translate into ineffective assistance by Attorney Norris.

        Finally, this Court should reject Mercado's claim that
Attorney Norris "coerced" Mercado into not filing a direct appeal
or that Attorney Norris "did not want to be involved in future
proceedings" with Mercado.  Again, Mercado has failed to supply
any facts in support this assertion but the bottom line is that
Mercado had no meritorious basis for a direct appeal.  The Court
committed no error in adopting the Probation Department's
calculation of the career-offender GSR.  In addition, the Court
clearly recognized its authority to depart downward but chose not
to do so.  Indeed, even now, Mercado has made no effort to
demonstrate what issue he could have validly raised on appeal and
the government can discern none.  Thus, Attorney Norris's post-

sentencing advice not to appeal (taking at face value Mercado's assertions) does not constitute ineffective assistance.   Even giving Mercado the benefit of the doubt and assuming that Attorney Norris was less-than-effective in the manner in which he communicated with Mercado, there was no prejudice because Mercado had no meritorious appeal.   Even if Mercado had filed a direct appeal, the outcome would have been the same.

### Conclusion

Based on the foregoing, the government respectfully requests that the Court dismiss Mercado's petition under 28 U.S.C. § 2255 without conducting an evidentiary hearing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

Michael J. Pelgro
Assistant U.S. Attorney

DATED:   March 23, 2004.

22

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

        Juan H. Mercado
        Inmate No. 24215-038
        FCI Ray Brook
        P.O. Box 9007
        Ray Brook, NY 12977

This 23rd day of March 2004.

MICHAEL J. PELGRO
ASSISTANT UNITED STATES ATTORNEY